NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CITY OF SURPRISE, *Plaintiff/Appellee*,

*v.*

CIRCLE CITY WATER COMPANY, LLC, *Defendant/Appellee*.

CIRCLE CITY WATER COMPANY, LLC, *Cross-Claimant/Appellee*,

v.

LAKE PLEASANT 5000, LLC, et al., *Cross-Defendants/Appellants*.

LAKE PLEASANT 5000, LLC, et al., *Counter-Claimants/Appellants*,

v.

CITY OF SURPRISE, et al., *Counter-Defendants/Appellees*.

No. 1 CA-CV 22-0532
FILED 9-21-2023

Appeal from the Superior Court in Maricopa County
No. CV2018-011038
The Honorable Connie Contes, Judge (Retired)
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED**

COUNSEL

Zeitlin & Zeitlin PC, Phoenix
By Dale S. Zeitlin, Casandra C. Markoff
*Counsel for Defendants/Appellants, Lake Pleasant 5000*

Snell & Wilmer, Phoenix
By Robert A. Henry
*Co-Counsel for Plaintiff/Appellee, City of Surprise*

City of Surprise, Surprise
By Robert W. Wingo
*Co-Counsel for Plaintiff/Appellee, City of Surprise*

Osborn Maledon, PA, Phoenix
By Meghan Grabel, Phillip W. Londen, Elias J. Ancharski
Counsel for *Defendant/Appellee, Circle City*

———————————————

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge David D. Weinzweig joined.

———————————————

**C A M P B E L L**, Judge:

¶1        Lake Pleasant 5000, L.L.C., Harvard Investments, Inc., Rex G. Maughan and Ruth G. Maughan as Trustees for the Maughan Revocable Trust of 2007, Dated August 24, 2007, Rex G. Maughan, and Ruth G. Maughan (collectively, the Landowners) challenge the superior court's rulings in favor of the City of Surprise (Surprise) and Circle City Water Company, LLC (Circle City) in this condemnation action. For the following reasons, we affirm.

**BACKGROUND**

¶2        The United States Congress enacted the Colorado River Basin Project Act (the Act) in 1968, providing for the construction, operation, and maintenance of the Central Arizona Project (CAP). 43 U.S.C. § 1521 ("For the purposes of furnishing irrigation water and municipal water supplies to the water-deficient areas of Arizona . . . the Secretary [of the Interior]

2

shall construct, operate, and maintain the Central Arizona Project[.]"). The Act appropriated federal dollars to build CAP infrastructure, 43 U.S.C. § 1528, which the federal government may recover by entering water-distribution "master contracts" with state political subdivisions. 43 U.S.C. § 1524(b)(1); *see also Maricopa-Stanfield Irrigation & Drainage Dist. v. Robertson*, 211 Ariz. 485, 488-89, ¶¶ 16-18 (2005). State political subdivisions, in turn, may then "make CAP water available to 'users' within [their] boundaries through subcontracts." *Maricopa-Stanfield*, 211 Ariz. at 488, ¶ 16 (citing 43 U.S.C. § 1524(b)(1)).

¶3　　　　That is what happened here. In 1972, the federal government entered a master contract with the Central Arizona Water Conservation District (the conservation district) to facilitate the delivery of CAP water. A.R.S. §§ 48-3701(12), -3702, and–3703. The conservation district is a multi-county, special-purpose taxing district. A.R.S. § 48-3702. Under the master contract, the federal government "agreed to construct and operate the CAP water delivery system in exchange for repayment of the attendant costs," *Maricopa-Stanfield*, 211 Ariz. at 489, ¶ 17, but the contract (1) requires that the United States "be a party to [any] subcontracts," (2) prohibits the assignment or transfer of contract rights without written approval from the Secretary of the Interior, and (3) disclaims any guarantee of water availability.

¶4　　　　In 1999, the federal government and the conservation district entered a subcontract with Circle City, which entitled Circle City to purchase as much as 3,932 acre-feet of CAP water each year, subject to availability. Like the master contract, the subcontract precludes Circle City from assigning or transferring its water rights under the subcontract without written approval from the Secretary of the Interior.

¶5　　　　The Landowners contacted Circle City in 2004, requesting water service for an undeveloped "master planned residential community" comprised of thousands of residential units, a hotel, and commercial space (the planned community). In March 2005, Circle City and the Landowners entered a water facilities agreement, which required:

- Circle City to apply with the Arizona Corporation Commission for an extension of its Certificate of Convenience and Necessity (CC&N) service area to include the planned community.[1]

- the Landowners to reimburse Circle City for any accounting, engineering, or legal expenses related to the expansion of the CC&N area;

- the Landowners to construct "both on-site distribution and off-site water infrastructure utility facilities necessary for Circle City to serve the [planned community]"; and

- Circle City "to provide potable domestic water service" to the planned community.

¶6        The facilities agreement did not specify the source of the potable water to be supplied, but a Water Master Plan, attached as an exhibit to the facilities agreement, added that the water supply "is anticipated to come from a combination of groundwater wells and (CAP) surface water supply."

¶7        As required under the facilities agreement, Circle City successfully petitioned to extend its CC&N area to include the planned community, and the Landowners reimbursed Circle City for its legal and engineering expenses ($67,782.61). From there, the Landowners did nothing. They took no action to either construct the requisite water infrastructure or develop the planned community. And in 2013, the Landowners notified Circle City that the planned community was "currently non-viable."

¶8        A few years later, Surprise entered a settlement agreement with Circle City for Surprise to condemn all of Circle City's assets, including the subcontract and the CC&N. While negotiating that settlement, Circle City reached out to the Landowners and offered to return the reimbursement monies for legal and engineering expenses that the

---

[1]        Ariz. Admin. Code R14-2-602(B)(2) ("Any utility that desires to extend its CC&N service area shall file with the Commission an application for a CC&N extension."). "Once granted, [a] certificate [of convenience and necessity] confers upon its holder an exclusive right to provide the relevant service for as long as the grantee can provide adequate service at a reasonable rate." *James P. Paul Water Co. v. Ariz. Corp. Comm'n*, 137 Ariz. 426, 429 (1983).

Landowners had previously remitted. The Landowners declined, and Surprise filed a condemnation complaint against Circle City and the Landowners. Surprise sought to acquire Circle City's real and personal property, as well as the CC&N and the subcontract, but disclaimed any interest in Circle City's obligations or liabilities, expressly excluding the facilities agreement from the condemnation. Surprise also sought a declaration that the facilities agreement granted the Landowners "no water or other property rights" in the condemned assets.

¶9        The Landowners asserted four counterclaims: (1) interference with contract (alleging Surprise agreed to pay Circle City "millions of dollars for assets that are basically worthless" to acquire Circle City's CAP water rights and thwart Circle City's fulfillment of its obligations to the Landowners under the facilities agreement); (2) inverse condemnation (alleging Surprise inversely condemned the Landowners' "valuable property right" by condemning Circle City's CAP water rights); (3) unconstitutional impairment of contract (alleging Surprise's taking of Circle City's assets, except for the facilities agreement, "unconstitutionally impairs" the Landowners' contract with Circle City); and (4) violation of 42 U.S.C. § 1983 (alleging Surprise's condemnation of Circle City's assets, except for the facilities agreement, violates the Landowners' substantive due process rights).

¶10        Circle City, in turn, crossclaimed for a declaratory judgment against the Landowners that Circle City's performance under the facilities agreement "w[ould] be rendered impossible" by Surprise's condemnation action, excusing its nonperformance on that basis. Circle City also requested an award of attorneys' fees. To that, the Landowners added a breach of contract crossclaim against Circle City.

¶11        In separate motions, Surprise and Circle City moved to dismiss the Landowners' crossclaims, arguing the Landowners had no compensable property rights under the subcontract. Circle City also reasserted that its nonperformance under the facilities agreement "would be excused under the doctrine of impossibility." Citing the same reasons, Surprise and Circle City also separately moved for judgment on the pleadings.

¶12        After briefing and oral argument, the superior court granted judgment on the pleadings in favor of Surprise and dismissed the Landowners' counterclaims against it. The court held that the Landowners had "no property right to the assets being condemned," including "any CAP water," reasoning that the facilities agreement neither conveyed "any

of Circle City's rights to water" to the Landowners nor required Circle City to provide the planned development with water from a specific source. The court also noted that the federal government's approval would have been required if the facilities agreement had guaranteed CAP water. Because the Landowners had no property interest in the condemned assets, the superior court also found they lacked "standing to challenge the determination of public use and necessity required for the condemnation."

¶13 Concerning the Landowners' claims against Circle City, the court found that Circle City's performance under the facilities agreement was "impracticable" and "excused" once Surprise condemned Circle City's assets. But the superior court denied Circle City's motions for dismissal and judgment on the pleadings, reasoning that the Landowners "may be entitled to restitution for amounts expended in part performance of the [facilities] agreement."

¶14 Following those rulings, Circle City moved for summary judgment on restitution, acknowledging that it "should repay" the Landowners the monies for costs incurred ($67,782.61) to expand its CC&N service area. But Circle City denied the Landowners' claim for $15 million in restitution—the negotiated amount due Circle City under the condemnation settlement agreement. In response to Circle City's motion for summary judgment, the Landowners requested "time and opportunity to conduct discovery" to determine "the appropriate measure of restitution" under Arizona Rule of Civil Procedure (Rule) 56(d). The superior court denied the Landowners' request for Rule 56(d) relief; instead, ordering Circle City to "file a new motion for summary judgment on the issue of the method and scope of restitution as a matter of law."

¶15 Consistent with the superior court's order, Circle City filed a supplemental motion for summary judgment, arguing that the proper scope of restitution when a party's "duty to perform is excused under the doctrine of impracticability" is the measure of benefits already "conferred" on the nonperforming party "by way of part performance or reliance." In response, the Landowners challenged Circle City's proposed measure of restitution, alleging "that Circle City actively solicited the condemnation to avoid its obligations to [the Landowners] under the [facilities agreement]," and therefore, under theories of breach of contract and unjust enrichment, the Landowners are entitled to the full amount ($15 million) Surprise agreed to pay Circle City under the condemnation settlement agreement. Agreeing with Circle City that the measure of restitution "does not include expectation damages," the superior court granted Circle City's summary judgment motion concerning the scope of restitution.

¶16        Upon the superior court's adoption of its *measure* of restitution, Circle City moved for summary judgment on the *amount* of restitution, arguing the only benefit conferred by the Landowners in part performance or reliance on the facilities agreement was the $67,782.61 the Landowners paid Circle City to reimburse the engineering and legal costs it expended to secure the expanded CC&N area. The Landowners cross-moved for summary judgment on the amount of restitution, relying on an expert's valuation to support their contention that the expansion of the CC&N area to include the planned community represented a $15 million benefit *conferred by the facilities agreement* to Circle City.

¶17        After full briefing and oral argument, the superior court granted Circle City's motion for summary judgment and denied the Landowners' cross-motion for summary judgment. The superior court found that the Landowners "present[ed] no evidence that [they] undertook any action to expand the CC&N area." In fact, to the contrary, the superior court found that Circle City took *all* action related to the expansion of its CC&N area. Noting the Landowners' failure to construct water infrastructure or otherwise develop the planned community, the superior court found "that whatever benefit [] flowed from an expanded CC&N resulted from Circle City's actions and the [Arizona Corporation Commission's] approval, not [the Landowners'] actions." Accordingly, the superior court concluded that the CC&N expansion "[wa]s not a benefit conferred by [the Landowners] on Circle City."

¶18        Having prevailed on summary judgment, Circle City requested an award of its attorneys' fees ($519,002.50) and costs under A.R.S. §§ 12-341, -341.01, and -329. The superior court awarded Circle City $150,000 in attorneys' fees under both A.R.S. §§ 12-341.01 and -349, plus costs, finding the Landowners' claims arose out of contract—the facilities agreement—and the Landowners made several "claims for restitution that were inconsistent with . . . prior rulings." Upon entry of final judgment, the Landowners timely appealed.

## DISCUSSION

I.        **Judgment on the Pleadings in Favor of Surprise and Dismissal of the Landowners' Counterclaims Against Surprise**

¶19        The Landowners first challenge the superior court's entry of judgment on the pleadings in favor of Surprise and its dismissal of their counterclaims against Surprise. They contend that Surprise's condemnation

of Circle City's assets stripped the planned community of all value—effectuating a taking of their property.

**¶20** "A motion for judgment on the pleadings pursuant to [Arizona Rule of Civil Procedure 12(c)] tests the sufficiency of the complaint, and judgment should be entered for the defendant if the complaint fails to state a claim for relief." *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 359, ¶ 2 (App. 1999). We review the granting of a motion for judgment on the pleadings de novo. *Id.*

**¶21** We likewise review de novo whether issues of fact or law preclude the dismissal of a counterclaim. *Save Our Valley Ass'n v. Ariz. Corp. Comm'n*, 216 Ariz. 216, 218-19, ¶ 6 (App. 2007); *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). A counterclaim is subject to dismissal if the claimant "[would not be] entitled to relief under any interpretation of the facts susceptible to proof." *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 556, ¶ 17 (App. 2014) (quoting *Coleman*, 230 Ariz. at 355-56, ¶¶ 7-8 (internal citation omitted)).

**¶22** In reviewing a judgment on the pleadings or the dismissal of a counterclaim, we assume the truth of all well-pled, material allegations in the complaint, but "do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005).

**¶23** Both the state and federal constitutions prohibit the government from taking private property without just compensation. *State ex rel. Miller v. Gannett Outdoor Co. of Ariz. Inc.*, 164 Ariz. 578, 579 (App. 1990) (citing U.S. Const. amend. V; Ariz. Const. art. 2, § 17). But the government cannot effect a taking of a property interest from a party that "had no property right to begin with." *State v. Mabery Ranch, Co.*, 216 Ariz. 233, 243, ¶ 39 (App. 2007). In other words, "the state is obligated to pay compensation for the taking of legally cognizable property interests" only, and "[a]ny other interests affected are non-compensable under the United States Constitution and Arizona law." *Gannett Outdoor Co. of Ariz. Inc.*, 164 Ariz. at 584. Accordingly, to prevail on a claim that the government unlawfully appropriated private property for public use without just compensation, a claimant must demonstrate a "diminution in (or elimination of) value" in "a *protected* property interest." *Mutschler v. City of Phoenix*, 212 Ariz. 160, 165, ¶ 16 (App. 2006) (emphasis added).

¶24 Under this framework, we must determine, as a threshold matter, whether a claimant has identified "a cognizable property interest" before considering whether the government action amounted to a taking. *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212-13 (Fed. Cir. 2005). To be clear, if a claimant fails to establish a legally recognized property interest, we need not examine the nature of the government's action. *Mutschler*, 212 Ariz. at 165.

¶25 Here, under the facilities agreement, the Landowners possessed the right to have Circle City provide water service to the undeveloped planned community from a combination of groundwater and surface water. That is not a protected property interest.

¶26 First, the facilities agreement did not convey vested water rights for either CAP water or groundwater. The agreement could not convey a right to CAP water without written approval of the Secretary of the Interior. *See City of Phoenix v. South Bank Corp.*, 133 Ariz. 90, 94 (App. 1982); *Maricopa-Stanfield*, 211 Ariz. at 488, ¶ 16 ("The terms and conditions of the [CAP] subcontracts were to be subject to the Secretary's approval . . . ."). And the agreement could not convey a right to groundwater because any such right would be prospective. *See Town of Chino Valley v. City of Prescott,* 131 Ariz. 78, 82 (1981) ("[T]here is no right of ownership of groundwater in Arizona prior to its capture and withdrawal from the common supply . . . ."); *see also Davis v. Agua Sierra Res., L.L.C.*, 220 Ariz. 108, 112 (2009) (describing a landowner's right to potential future groundwater as "an unvested expectancy").

¶27 Second, the facilities agreement provided the Landowners with the right to a *service*—Circle City's future delivery of potable water to the planned community—not a *property* right in Circle City's assets, and contract expectancies are not compensable property interests.[2] *See Gannett Outdoor Co. of Ariz. Inc.*, 164 Ariz. at 580 (noting expectant interests, those that depend upon the occurrence of a future event, are not compensable);

---

[2] Notably, the Landowners have not constructed any of the infrastructure necessary to enable water delivery service to the planned community. *Cf. Gannett Outdoor Co. of Ariz. Inc.*, 164 Ariz. at 579-84 (recognizing "that a lease term containing an unconditional right to renew in favor of the lessee may constitute a legally compensable interest" when evidence demonstrates the lessee would likely exercise that right, but concluding a lessee's "mere expectancy of continued lease renewals" based on previous conduct was insufficient to require compensation).

*Steinfeld v. Nielsen*, 15 Ariz. 424, 465 (1913) (explaining contract rights "are expectant[] when they depend upon the continued existence of the present condition of things until the happening of some future event").

**¶28**        Analogizing their contractual relationship with Circle City to the contractual relationships at issue in *International Paper Co. v. United States*, 282 U.S. 399 (1931), and *City of Phoenix v. South Bank Corp.*, 133 Ariz. 90 (App. 1982), the Landowners nonetheless assert that their rights to potable water service under the facilities agreement "are compensable property interests." But the Landowners' reliance on these cases is misplaced.

**¶29**        In *International Paper*, the claimant paper company petitioned for compensation after the federal government requisitioned all waters diverted through a river's power canal—waters that the paper company "was entitled, by conveyance and lease [with the power company], to draw" on for a specified supply—a property right under the governing state (New York) law. 282 U.S. at 405. Rejecting the government's "quibbling distinctions," the United States Supreme Court found that the government "took the property that [International Paper] *owned as fully as*" the power company. *Id.* at 407-08 (emphasis added).

**¶30**        In *South Bank*, a city condemned certain private property for a landfill site. 133 Ariz. at 91. "Just prior" to the condemnation, the landowner "entered into a 'material sales contract'" granting a mining company "the right to purchase sand and gravel" from a "massive . . . deposit" on the property. *Id.* Noting the contract authorized the mining company to physically enter the landowner's property and use its machinery and equipment to remove "portions of the real estate," this court characterized the agreement as "a classic profit a prendre arrangement." *Id.* at 93. Because "profits a prendre *are interests in real property*," this court held that the mining company had "a legally cognizable interest in the property for which compensation was payable upon taking." *Id.* (emphasis added).

**¶31**        Both cases are readily distinguishable from the circumstances here. Unlike the lease in *International Paper*, which gave the paper company the legal right to draw a specified volume of the power company's canal water, and the profit a prendre agreement in *South Bank*, which gave the mining company the right to remove certain deposits of sand and gravel from the landowner's real property, the facilities agreement gives the Landowners no tangible property rights to Circle City's condemned assets. In fact, rather than authorizing the Landowners to directly make use of Circle City's property (draw from its water assets), the facilities agreement

merely obligates Circle City to provide the Landowners with a service—the delivery of potable water.

¶32            Like the superior court, we are persuaded by *Maricopa-Stanfield Irrigation & Drainage District v. Robertson*, 211 Ariz. 485 (2005). In *Maricopa-Stanfield*, the United States and the conservation district entered into subcontracts with two irrigation districts. *Id.* at 489, ¶¶ 18-19. "[T]he subcontracts contemplated that CAP water would be delivered by the districts to agricultural landowners for irrigation," and each irrigation district entered into separate water service agreements with its respective landowners. *Id.* at ¶ 19. "[T]he water service agreements did not guarantee the landowners access to CAP water; they instead allowed the [irrigation] districts to deliver irrigation water without specifying its source." *Id.* at ¶ 20. But the parties "expected that the [irrigation] districts would deliver, and the landowners would pay for, CAP water under the water service agreements." *Id.* "After the CAP [infrastructure] was completed, the [irrigation] districts were unable to meet their financial obligations" to repay the costs of constructing the irrigation distribution systems under the subcontracts. *Id.* at ¶¶ 18, 21. "Facing financial collapse," the irrigation districts and the conservation district negotiated a comprehensive water settlement. *Id.* at ¶¶ 21-23. Although most landowners in each district approved the settlement agreement, the dissenting landowners pursued litigation, "alleging that they had vested rights to CAP water that could not be abrogated without their consent." *Id.* at 487, 489, ¶¶ 5, 23. Because only a contract with the Secretary of the Interior can "establish a right" to CAP water, the supreme court found that the landowners' water service agreements with the irrigation districts did not "create a vested right to CAP water." *Id.* at 490-91, ¶¶ 27, 32. In concluding that entry of judgment in favor of the irrigation districts was warranted, the supreme court emphasized that the water service agreements obligated the irrigation districts to deliver water only. *Id.* at 494, ¶ 54.

¶33            Applying *Maricopa-Stanfield* here, the Landowners have no legally cognizable property right to CAP water, the subcontract, or any other Circle City asset. Like the water service agreements at issue in *Maricopa-Stanfield*, the facilities agreement here failed to specify the source of the potable water to be delivered, and it did not convey any right to CAP water (nor could it without written approval of the Secretary of the Interior), any other water source, or any other Circle City asset to the Landowners.

¶34            In sum, because the Landowners have no cognizable property interest in Circle City's CAP water rights or any other condemned asset,

Surprise's condemnation of those assets did not effect a compensable taking of the Landowners' property under the Arizona and United States Constitutions. Therefore, we affirm the superior court's judgment on the pleadings in favor of Surprise and its dismissal of the Landowners' counterclaims against Surprise.[3]

## II. Summary Judgment on Restitution and Award of Attorneys' Fees

**¶35** The Landowners next challenge the superior court's summary judgment rulings on restitution in favor of Circle City. In reviewing a grant of summary judgment, we view the facts and the reasonable inferences drawn from those facts in the light most favorable to the non-moving party and affirm "if the evidence produced in support of the defense or claim has so little probative value that no reasonable person could find for its proponent." *State Comp. Fund v. Yellow Cab Co. of Phoenix*, 197 Ariz. 120, 122, ¶ 5 (App. 1999). We review de novo the superior court's application of the law. *Id.*; *see also* Ariz. R. Civ. P. 56(a) ("The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."). We also review de novo contract interpretation. *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 17 (App. 2010).

**¶36** The Landowners contend the superior court improperly limited their restitution relief to the monies they expended under the facilities agreement, "denying [them] the right to collect the present value

---

[3] The Landowners also argue that the superior court improperly found they lacked standing to challenge the public use and necessity of the condemnation action. By statute, any person "having or claiming an interest in any of the property described in the [condemnation] complaint, or in the damages for the taking thereof, . . . may appear, plead and defend in respect to his property or interest, or that claimed by him." A.R.S. § 12-1120. In this case, the Landowners had the opportunity to appear in the condemnation action and assert their claim of a property interest. But once the superior court determined that they had no property interest in the condemned assets, the Landowners had no standing to challenge the public use and necessity of the condemnation action. For the same reason, to the extent the Landowners challenge the legality of Surprise's taking of the condemned assets absent evidence of written authorization from the federal government and conservation district, they similarly lack standing.

of [Circle City's] enlarged CC&N." According to the Landowners, the facilities agreement conferred a substantial benefit on Circle City by providing the predicate for its expanded CC&N service area.[4]

¶37　　　A party seeking restitution for damages under a contract discharged for impracticability is entitled to compensation for the benefit that his contractual performance or reliance has conferred on the other party. *See* Restatement (Second) of Contracts § 377 (1981) ("A party whose duty of performance does not arise or is discharged as a result of impracticability of performance . . . is entitled to restitution for any benefit that *he has conferred* on the other party *by way of part performance or reliance*.") (emphasis added). Thus, properly framed, the question here is what benefit, if any, the Landowners conferred upon Circle City through their part performance or reliance on the facilities agreement, not, as the Landowners argue, whether Circle City derived any benefit from the facilities agreement.

¶38　　　Examining the parties' respective performances, Circle City applied for and received an expanded CC&N service area and the Landowners reimbursed Circle City for the expenses associated with that application. But the Landowners never constructed the necessary infrastructure for water delivery service, effectively preventing Circle City from fulfilling its obligation to deliver potable water to the planned community. In fact, it is undisputed that the Landowners never developed the planned community to any degree.

¶39　　　On this uncontroverted record, any benefit accorded to Circle City from its expanded CC&N service area was the result of *its* performance under the facilities agreement, *not the Landowners' performance*. Indeed, consistent with the superior court's findings, the record neither reflects that the Landowners "undertook any action to expand the CC&N area" nor that they otherwise conferred any benefit to Circle City. Because the Landowners are not entitled to compensation, as a matter of law, for any benefit conferred to Circle City by the expanded CC&N service area, we

---

[4]　　The Landowners also assert that Circle City "is a conscious wrongdoer," having "actively solicit[ed] the condemnation" to avoid its water service obligations under the facilities agreement. Citing principles of unjust enrichment, the Landowners argue that Circle City should be divested of any "benefits" it received under the facilities agreement. But as Circle City points out, the Landowners only pled a crossclaim for breach of contract, so disgorgement based on an allegation of unjust enrichment "is not an available remedy here."

need not determine the CC&N's increased value, if any.[5] *See* A.R.S. § 40-287 ("Any portion of the certificated area of a private water company which does not contain an operating distribution system . . . is presumed to have de minimis value for the purposes of condemnation.").

**¶40** In sum, given the Landowners' minimal performance under the facilities agreement, the superior court properly limited restitution to the amount they reimbursed Circle City for engineering and legal expenses associated with the expanded CC&N. Therefore, the superior court did not err by entering summary judgment on restitution in favor of Circle City and denying the Landowners' cross-motion for summary judgment.[6]

**¶41** Finally, the Landowners challenge the superior court's award of attorneys' fees to Circle City under A.R.S. § 12-349, arguing they disagreed that the evidence was not substantially justifiable. But the Landowners neither challenge the amount nor the other statutory basis for the fee award. Because the Landowners do not contest the superior court's award of attorneys' fees under A.R.S. § 12-341.01—arising out of a contract—we uphold the attorneys' fees award on that basis. *Cf. White Mountain Health Ctr., Inc. v. Maricopa Cnty.*, 241 Ariz. 230, 252, ¶ 80 (App. 2016) (uphold fee award on statutory bases not challenged).

---

[5] Having found, as a matter of law, that the Landowners did not confer upon Circle City the benefit of an expanded CC&N service area, we need not address the Landowners' contention that the superior court improperly excluded their expert's valuation opinion.

[6] Although the Landowners contend that they have "rel[ied] on the [facilities agreement] for more than fifteen years," the record reflects no evidence of their reliance apart from their reimbursement of engineering and legal fees incurred by Circle City to expand its CC&N service area. More importantly, the Landowners fail to identify any benefit their purported reliance conferred on Circle City sufficient to justify restitution on that basis.

## CONCLUSION

**¶42** For the foregoing reasons, we affirm. Both the Landowners and Circle City request an award of their attorneys' fees on appeal. This dispute arises out of the facilities agreement and Circle City is the successful party on appeal. *See* A.R.S. § 12-341.01. Accordingly, Circle City may recover its reasonable attorneys' fees and taxable costs incurred in this appeal upon compliance with ARCAP 21.[7]



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[7] We deny the Landowners' request to impose sanctions on Surprise.