# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20255

United States Court of Appeals
Fif h Circuit

**FILED**
March 24, 2017

Lyle W. Cayce
Clerk

KIPP FLORES ARCHITECTS, L.L.C.,

     Plaintiff - Appellant

v.

MID-CONTINENT CASUALTY COMPANY,

     Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, BARKSDALE, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This is the third appeal arising out of an architectural copyright infringement action and subsequent Chapter 7 bankruptcies of two related companies in the homebuilding business. After Kipp Flores Architects ("KFA") sued Hallmark Collection of Homes, L.L.C., for copyright infringement, Hallmark Collection commenced a "no asset" bankruptcy case. KFA filed a bankruptcy proof of claim for copyright infringement damages. Relying on its "deemed allowed" claim, 11 U.S.C. § 502(a), as a final judgment, KFA sued appellee Mid-Continent Casualty Company, the debtor's liability insurer. KFA argues that the unobjected-to claim constitutes a final judgment and is res judicata as to Mid-Continent. The question on appeal is what "deemed allowed" means when a proof of claim is filed in a no-asset bankruptcy case, no

No. 16-20255

deadline is set for objections to claims, and no "party in interest" objects? We conclude that the text and structure of the Bankruptcy Code, Rules and Official Forms, and relevant case law all support affirming the district court's summary judgment against KFA.

## BACKGROUND

Appellant KFA creates and markets proprietary home designs and plans. In a series of licensing agreements, KFA prepared twenty-one different architectural designs for Texas-based Hallmark Collection of Homes, L.L.C. ("Hallmark Collection"). Hallmark Collection obtained a license to build one, and only one, house per plan—unless Hallmark Collection compensated KFA for each additional house built from that plan. Hallmark Collection, however, built several hundred houses from the licensed plans without paying KFA.

KFA filed suit in March 2009 for violations of federal copyright law and actual or statutory damages under 17 U.S.C. § 504. The defendants included Hallmark Collection, the limited partnership Hallmark Design Homes, L.P. ("Hallmark Design"), and Joe Partain, an owner of Hallmark Collection. In the midst of the copyright lawsuit, Hallmark Collection and Hallmark Design filed separately for Chapter 7 bankruptcy protection in November 2009. Both bankruptcy filings stated on Form B1 that, "after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors." KFA's copyright suit was stayed pending the bankruptcy cases on November 23, 2009. 11 U.S.C. § 362(a).

Hallmark Collection's schedules disclosed liabilities in excess of $2.5 million but listed no assets available for distribution to creditors. KFA was listed as a creditor with an unsecured nonpriority claim for an unknown amount based on the copyright suit. In early January 2010, the Chapter 7 Trustee distributed the following notice to creditors:

2

No. 16-20255

> It having appeared from the schedules of [Hallmark Collection] at the time of filing that there was no estate from which any dividend could be paid to creditors, the notice to creditors advised that it was unnecessary for any creditor to file his claim at that time.
>
> It appearing subsequently that there is an estate from which a dividend to creditors may be paid, creditors must now file claims in this case in order to share in any distribution from the estate. CLAIMS MUST BE FILED ON OR BEFORE NINETY (90) DAYS FROM THE ISSUANCE OF THIS NOTICE.
>
> Claims which are not filed timely as set forth above will not be allowed, except as otherwise provided by law.

Responding to this notice, KFA timely filed a proof of claim for $63,471,000 against Hallmark Collection. (This amount was based on the debtor's gross receipts from sales of the infringing homes.) No deadline was set by the court for objecting to claims. Unsurprisingly, neither the trustee nor any other party in interest objected to KFA's proof of claim. The bankruptcy court entered no order allowing or disallowing the claim. But in August 2010, the Chapter 7 Trustee submitted a No Asset Report, stating that there were no proceeds from the Hallmark Collection estate for distribution to creditors. The bankruptcy court closed the case five weeks later.

While Hallmark Collection's case was pending, KFA amended its complaint in the copyright lawsuit and added individual defendants Laura Partain and William Graper, each of whom filed Chapter 7 bankruptcy cases. KFA persuaded the district court in August 2011 to withdraw the reference to the bankruptcy court of claims against Hallmark Design, Joe Partain, and Laura Partain in the underlying copyright suit. *See* 28 U.S.C. § 157(d). KFA never made a similar request with respect to the claim against Hallmark Collection.

In November 2011, KFA amended its proof of claim in the Hallmark Design bankruptcy case, seeking over $83 million, and filed an identical claim

No. 16-20255

in the Partain case. The respective Chapter 7 Trustees' objections to KFA's claims were consolidated with the underlying copyright action. After the district court lifted the automatic stay, KFA prevailed in a jury trial of the copyright suit that yielded a finding of $3,231,084.00 damages against Hallmark Design but imposed no liability on the individual defendants. KFA was granted an "allowed unsecured claim" for $3,239,688.40 in the Hallmark Design bankruptcy. Hallmark Design appealed, and the Fifth Circuit affirmed.[1]

Appellee Mid-Continent, Hallmark Design's insurer, had been approved to represent the trustee in KFA's litigation. The insurer next filed a declaratory judgment action in January 2013 to challenge its policy coverage of the judgment against Hallmark Design. KFA counter-claimed and prevailed in the district court.[2] The Fifth Circuit affirmed that judgment[3], and Mid-Continent paid KFA $3,031,563.12.

While litigation over the Hallmark Design judgment was pending, KFA made demand on Mid-Continent to pay off KFA's "final judgment" obtained for its proof of claim in the Hallmark Collection bankruptcy. KFA sought payment of the Mid-Continent policies' $6 million face value.

When Mid-Continent refused to pay, KFA filed this action in September 2014 for breach of contract as a judgment creditor of Hallmark Collection and third-party beneficiary under Mid-Continent's policies. The district court referred the matter for pretrial management, pursuant to 28 U.S.C.

---

[1] *Kipp Flores Architects, L.L.C. v. Hallmark Design Homes, L.P.*, 544 Fed. App'x. 553, 554 (5th Cir.2013).

[2] *See Mid-Continent Cas. Co. v. Kipp Flores Architects, LLC*, No. 1:13-CV-60-JRN, 2014 WL 3417544 (W.D. Tex. Apr. 3, 2014).

[3] *See Mid-Continent Cas. Co. v. Kipp Flores Architects, LLC*, 602 Fed. App'x 985 (5th Cir. 2015).

4

§ 636(b)(1)(A) and (B), to a magistrate judge. Following protracted proceedings, the parties filed cross-motions for summary judgment.

Citing precedent from multiple bankruptcy courts around the country, the magistrate judge concluded that "KFA's proof of claim was not 'deemed allowed,' as a matter of law." In part, the magistrate judge reasoned that in cases where there are no assets available for distribution to creditors, the bankruptcy claims allowance process "was never 'triggered' at all." After reviewing KFA's objections to the magistrate judge's recommendation, the district court adopted it with one modification that is irrelevant here. KFA appealed.

## STANDARD OF REVIEW

The standard of review for a district court's grant of summary judgment is de novo, *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), applying the usual standards under Federal Rule of Civil Procedure 56. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## DISCUSSION

KFA contends that the district court judgment created a "no asset case" exception to 11 U.S.C. § 502(a) contrary to the provision's plain language. According to KFA, the Bankruptcy Code is unambiguous: any proof of claim is deemed allowed if no party in interest objects. Because no party objected to KFA's proof of claim in the Hallmark Collection bankruptcy case, the claim was "deemed allowed," became a final judgment against Hallmark Collection, and under principles of res judicata, suffices to trigger Mid-Continent's duty to indemnify its insured, Hallmark Collection.

Mid-Continent responds that KFA's proof of claim did not result in a final judgment in Hallmark Collection's no asset Chapter 7 case. The allowance of KFA's claim for copyright infringement damages served no bankruptcy purpose because there were no assets to be marshalled and distributed among

creditors. According to Mid-Continent, the Bankruptcy Code, read as a whole, provides that proofs of claim may be filed and become subject to bankruptcy court adjudication in the claims process only when assets are available or are thought to be forthcoming for distribution.

This appeal raises an intriguing question of statutory interpretation. We conclude that Mid-Continent has the better of the argument when Section 502 is read in tandem with other provisions of the Bankruptcy Code. Further light is shed on the question by the relevant Bankruptcy Rules and Official Forms, which are promulgated under the auspices of the U.S. Supreme Court and approved by Congress. *See* 28 U.S.C. § 2075 ("Bankruptcy Rules").

The core of KFA's case is Section 502(a), which states:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C § 502(a). Standing alone, the provision appears to say that any bankruptcy proof of claim not objected to by a "party in interest" is "deemed allowed." KFA would have the analysis stop here. But interpretations of the Bankruptcy Code, many of whose terms are subject to further explication, rarely end with a single sentence. This provision deems proofs of claim "allowed" only when the claims are "filed under [11 U.S.C.] Section 501," and the claims are not objected to by "any party in interest." "An understanding of the codal structure for the allowance or disallowance of creditors' claims is critical to a proper understanding and analysis of this case." *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985). Section 502(a) cannot be correctly understood without examining the context in which "filing," "allowance," and "party in interest" are used throughout the Code.

No. 16-20255

The definition of a "claim" in bankruptcy is extremely broad, encompassing all rights to payment, of whatever nature, whether fixed, liquidated, contingent, matured, disputed, legal, equitable, or secured. *See* 11 U.S.C. § 101(5)(A). The job of the bankruptcy courts is to oversee trustees' marshalling of a debtor's assets for appropriate distribution among the creditors. *Pioneer Invest. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 389 (1993). Claims "allowance" covers the approval, revision, or rejection of filed claims, and the process afforded by the Bankruptcy Rules, as effectuated in court orders.

A creditor whose claim is allowed may participate in the ultimate distribution of the debtor's assets. Prefatory to allowance, however, Section 501 states that a creditor "may" file a proof of claim. 11 U.S.C. § 501(a). In fact, that section uses the term "may" six times. *Id.* §§ 501(b), (c), (d), (e). "May" is not "must;" "may" can mean "is permitted to,"[4] or "possibly" (as in "may or may not").[5] That filing a claim is described in permissive or contingent terms contrasts with the mandatory language prevalent elsewhere in Title 11. For example, if an objection is made to a filed claim, the bankruptcy court "*shall* determine the amount of the claim and allow the claim in such amount." 11 U.S.C. § 502(b) (emphasis added); *see also* § 502(b), (c), (d).

---

[4] "Section 501 permits, but does not require, a creditor to file a proof of claim." *In re Thomas*, 883 F.2d 991, 996 (11th Cir. 1989).

[5] *See* "May," The Random House Dictionary of the English Language (1966). *See also* "May," Merriam-Webster's Dictionary of the English Language, http://www.merriam-webster.com/dictionary/may, accessed Mar. 22, 2017 (defining "may" as "used to indicate possibility or probability").

No. 16-20255

Relevant here, courts have frequently held that creditors "may" choose not to file claims in a bankruptcy case with no assets available for distribution.[6] "A proof of claim should be filed only when some purpose would be served." *In re Simmons*, 765 F.2d at 551; *see also Matter of Smith*, 21 F.3d 660, 663 (5th Cir. 1994) (holding creditors are not obliged to file proofs of claim in no asset cases).[7] "[I]n no-asset cases it is unnecessary for creditors to file claims and the bankruptcy court therefore sets no deadline for filing such claims." *Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 958 (D. Minn. 2013). "Courts have consistently viewed no-asset cases differently" because "proofs of claim are either unnecessary or not accepted for filing." *In re Anderson*, 72 B.R. 783, 787 (Bankr. D. Minn. 1987). "If a trustee has determined that there are no assets

---

[6] Secured creditors, for instance, are also not required to file proofs of claim in order to protect their security interests. 11 U.S.C. § 506(d). *See In re Be-Mac Transp. Co., Inc.*, 83 F.3d 1020, 1025 (8th Cir. 1996) ("a secured creditor need not file a claim in a bankruptcy proceeding to preserve its lien"); *In re Kleibrink*, No. 3:07-CV-0088-K, 2007 WL 2438359, at *10 (N.D. Tex. Aug. 28, 2007) ("the bankruptcy code does not require a secured creditor to file proof of claim to preserve a lien.").

[7] *See also In re Mendiola*, 99 B.R. 864, 867 (Bankr. N.D. Ill. 1989) ("[A] proof of claim serves only one purpose in a Chapter 7 case: it is the creditor's assertion of a right to participate in the distribution of the assets of the estate. In a case without assets to distribute the right to file a proof of claim is meaningless and worthless."). Indeed, the bankruptcy hornbook answer to the question in this appeal is that the only purpose of a Chapter 7 case is to distribute whatever assets the trustee marshals on a pro rata basis among the creditors:

> In no-asset chapter 7 liquidation cases, the filing of a proof of claim serves no practical purpose since there will be no distribution from the estate in which to participate. In such cases, the notice of the meeting of creditors may include a statement that it is unnecessary to file claims. If a trustee subsequently notifies the bankruptcy court that a dividend may be possible, Bankruptcy Rule 3002(c)(5) provides that notice may be sent to creditors informing them of the need to file a proof of claim.

4 Collier on Bankruptcy ¶ 501.01, at 501-3[b] (16th ed. 2011). Rather than reflecting a "purposivist" interpretation of claims filing, however, the hornbook applies "may" in Section 502 consistently with related provisions as detailed in text above.

to distribute in a Chapter 7 case, the requirement to file a proof of claim is meaningless." *In re Baskowitz*, 194 B.R. 839, 845 (Bankr. E.D. Mo. 1996).

Indeed, creditors are often discouraged from filing claims by the issuance of a standard "no asset" notice:

> In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors *may* include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

Fed. R. Bankr. P. 2002(e) (emphasis added). Creditors who are told there are no assets available for distribution *may be* instructed that it is unnecessary to file claims. There's the contingency again. "Indeed, creditors in no-asset chapter seven cases are not even required to *file* proofs of claim." *In re Mesa Bus. Park P'ship*, 127 B.R. 144, 148 (Bankr. W.D. Tex. 1991) (emphasis original). *See also In re Beezley*, 994 F.2d 1433, 1436 (9th Cir. 1993) ("The bankruptcy rules . . . permit the court to dispense with the filing of proofs of claim in a no-asset case."). "Since most Chapter 7 cases begin and end as no asset cases, the Rule [Bankr. Rule 2002(e)] has saved substantial time and storage space for bankruptcy clerks throughout the country." *In re Corgiat*, 123 B.R. 388, 389 (Bankr. E.D. Cal. 1991).

The other side of the same coin appears in Bankruptcy Rule 3002(c)(5), which dictates procedures if assets are later discovered in what initially appeared to be a no-asset case:

> If notice of insufficient assets to pay a dividend was given to creditors under Rule 2002(e), and subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk *shall* give at least 90 days' notice by mail to creditors of that fact and of the date by which proofs of claim must be filed.

Fed. R. Bankr. P. 3002(c)(5) (emphasis added).  Thus, if there are assets and distribution "appears possible," the clerk *shall* give notice and establish a deadline.  Fed. R. Bankr. P. 3002.  No permissive language eliminates the trustee's obligation to give notice and set a claims deadline in an asset case.

In sum, whether or not claims "may" be filed pursuant to Section 502(a) is generally contingent on the possibility of asset distribution.  Likewise, the necessity for creditors to file and the courts to adjudicate claims depends on the existence of assets in the debtor's estate.  *See In re Mesa*, 127 B.R. at 150, n.8 ("Chapter seven trustees . . . are discouraged from objecting to ordinary unsecured claims even in asset cases if the claims will not receive a distribution in any event.").  The Bankruptcy Rules plainly contemplate pretermitting claims allowance and objection procedures when there are no distributable assets.

The current Official Bankruptcy Forms[8]—critical to everyday bankruptcy practice—reinforce that Section 502(a) is directed to deeming claims "allowed" where a debtor's estate may afford a distribution on account of those claims.  Form 9D provides notice of the meeting of creditors and filing deadlines in a Chapter 7 business case and is parenthetically titled "Corporation/Partnership *Asset* Case."  Form 9D at 1 (emphasis added).  This form is specific to cases with assets.  Similarly, the default setting on the form applicable to corporate Chapter 7 cases,  Official Form 9C (for Corporations and Partnerships), line 8, "Proof of claim," states: "Please do not file a proof of claim unless you receive a notice to do so."  Later, Form 9C states:

> No property appears to be available to pay creditors. Therefore, please *do not file a proof of claim now*. If it later appears that assets are available to pay creditors, the clerk will send you another

---

[8] *See* "United States Courts Services & Forms," where users can search for and find national federal court forms that can be used in all federal courts, available at http://www.uscourts.gov/services-forms/forms, last accessed Mar. 22, 2017.

No. 16-20255

notice telling you that you may file a proof claim and stating the deadline.

*Id.* (emphasis added).  No assets means no proofs of claim should be filed.

Not only the Official Bankruptcy Forms, but the "General Information" instructions included with them consistently distinguish between asset and no-asset cases for purposes of claims filing.  For example, "[f]orms 9A, 9B, 9C and 9D – used only for chapter 7 cases, – vary *based on whether there are assets available to pay creditors.*"   Instructions, Form B9(A-I), 12.01.09, at 1 (emphasis added).  The instructions later state:

> In the forms used in no-asset cases – Forms 9A and 9B, there is no deadline for filing a proof of claims.  In its place, creditors are instructed not to file a proof of claim unless they receive a notice to do so.

*Id*. at 3.  Unless the Official Forms are inconsistent with Section 502(a), a contention not made by KFA, they explain that proofs of claim need only be filed in asset-holding bankruptcy cases, for it is only in such cases that the claims allowance process is required.[9]

According to these standard procedures, when creditors in a no asset case are instructed not to file proofs of claim, they are effectively deterred from exercising their rights as "parties in interest" to object to others' claims.  The Bankruptcy Code does not provide an exclusive definition of a party in interest,[10] but the Code broadly includes debtors, creditors, trustees, indenture trustees, and equity security holders among the parties entitled, *e.g.*, to notice

---

[9] "A bankruptcy court will normally not involve itself in fixing the amounts of claims in no-asset cases.  Bankruptcy procedure is structured so that there will not be a claims resolution process in a no-asset chapter 7 case."  *In re Shapiro*, 188 B.R. 140, 148 (Bankr. E.D. Pa. 1995).

[10] "The list of potential parties in interest in [11 U.S.C.] § 1109(b) is not exclusive." *In re Glob. Indus. Techs., Inc*., 645 F.3d 201, 210 (3d Cir. 2011).

No. 16-20255

of proceedings in the case. *See, e.g.*, Fed. R. Bankr. P. 2002. Any "party in interest" may object to a proof of claim and request the court to determine its correct amount. *See* Fed. R. Bankr. P. 3007(a). Objections are often filed by the trustee or other parties in order to prevent unauthorized distributions to creditors. KFA contends that Mid-Continent was a "party in interest" in the Hallmark Collection case not only because it is the debtor's liability insurer but because it specifically sought notices in the case and in fact participated in the Hallmark Design case.[11] Regardless, after learning that the Hallmark Collection bankruptcy was a no asset case, no party in interest, including Mid-Continent, had any reason to ascertain that KFA filed a proof of claim, much less to object to the superfluous claim.

Section 502 would be significantly transformed if, under KFA's reading, certain "parties in interest" in no asset cases would be required to monitor, object to, and litigate proofs of claim that need not even be filed. Those parties would have to invoke the claims allowance process, not to affect non-existent distributions from the debtor's estate, but solely to prevent collateral consequences in other litigation. Not only insurers like Mid-Continent, but also parties in the position of sureties, guarantors, general partners, and other entities that might share liability for claims against a debtor would risk suffering adverse judgments in the form of "deemed allowed" claims. Since the

---

[11]"[C]ourts are generally in agreement that an insurance policy will be considered property of the estate . . . Any rights the debtor has against the insurer, whether contractual or otherwise, become property of the estate." *Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993). *See also In re Davis*, 730 F.2d 176, 184 (5th Cir.1984); *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 533 (5th Cir. 1995). Liability insurance, however, is a different matter. "We have held that while insurance policies are generally property of the estate, the proceeds of liability insurance policies, unlike first party policies, generally are not." *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1023 (5th Cir. 2012). *See also Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 801 (Bankr. M.D. La. 2001) ("[T]he proceeds of liability insurance payable to non-debtor parties are not property of the debtor's estate under 11 U.S.C. § 541, or any other provision of the Code.").

bankruptcy courts "shall" adjudicate claims to which an objection has been filed, 11 U.S.C. § 502(b), the courts' workload would increase substantially without yielding any benefit whatsoever to the debtor or the debtor's estate.

Mid-Continent emphasizes the lack of benefit to the bankruptcy process to argue that *in this case*, the bankruptcy court lacked jurisdiction to adjudicate KFA's claim against Hallmark Collection because the outcome of the dispute could have no conceivable impact on the non-existent debtor's estate. *See Matter of Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (holding the outer limit of the bankruptcy court's subject matter jurisdiction involves matters which have a "conceivable effect" on the estate's administration); *In re Skuna River Lumber, LLC*, 564 F.3d 353, 357 (5th Cir. 2009) (holding that a bankruptcy court lacked subject matter jurisdiction to impose Bankruptcy Code surcharge after property was transferred from the estate); *In re Mesa*, 127 B.R. at 147–78 (declining to value lender's deficiency claim as advisory opinion in the absence of any assets available for distribution to creditors). We do not agree. That a bankruptcy case is filed as or becomes a no asset case does not deprive the bankruptcy court of subject matter jurisdiction for many administrative purposes. The bankruptcy court had subject matter jurisdiction over this no asset case, but the Bankruptcy Code affords discretion with regard to claims allowance, and no claims allowance procedures took place here. There cannot be a "deemed allowed" claim where there were no distributable assets, no other bankruptcy-related purpose for claims "allowance," and parties in interest were not on notice of the obligation to file objections to claims.

It is additionally worth observing that filing a proof of claim in the Hallmark Collection case was not only superfluous but wholly unnecessary to preserve KFA's ultimate rights. Courts often grant creditors relief from the automatic stay so they can adjudicate their unliquidated claims against a

debtor outside of bankruptcy court, particularly when the claims are already the subject of pending litigation. *See, e.g.*, *In re Xenon Anesthesia of Texas*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). In the Hallmark Design case, this is what happened, and KFA recovered a judgment, which it then enforced to the extent of that debtor's policy from Mid-Continent. KFA could have sought relief from the automatic stay to pursue its claim against Hallmark Collection in litigation. In fact, requesting such relief might not have been necessary inasmuch as the stay terminates against a non-individual debtor, like this L.L.C., when the case is closed or dismissed. 11 U.S.C. § 362(c)(2). Such a debtor, unlike an individual debtor, is not entitled to a discharge or to protection against later litigation, 11 U.S.C. § 727(a), and the statute of limitations is suspended during the bankruptcy case. 11 U.S.C. § 108. The Bankruptcy Code did not (and still does not) interfere with KFA's right to pursue its claims against Hallmark Collection, and subsequently its insurer, for their full value without more than a temporary hindrance from the automatic stay. These facts further undermine the argument that KFA should benefit from having filed a superfluous proof of claim.

KFA relies on a body of cases that simply quote or rephrase Section 502(a) where the provision's meaning for no asset cases was not at issue. *See, e.g.*, *In re Taylor*, 132 F.3d 256, 261 (5th Cir. 1998) (in a Chapter 11 tax liability dispute,"[o]nce a proof of claim is filed, the debt is considered allowed unless the debtor or another party in interest files an objection to the proof of claim"). KFA attaches to these holdings the general principle that judicial interpretation of a statute should be limited to "the words of the statute, which are assumed to carry their ordinary meaning." *Stanford v. Comm'r*, 152 F.3d 450, 455–456 (5th Cir. 1998). This approach, however, fails to address the whole context covered by Sections 501 and 502 as elucidated in the Bankruptcy Rules and Official Forms and case law. It also fails to account for

the fact, evidenced by the Hallmark Design case, that lifting the Section 362 automatic stay allows a creditor even in a no-asset case to litigate its dispute with the debtor outside of the bankruptcy court. KFA's interpretation of Section 502(a), in contrast, invokes the claims allowance procedure in a no-asset case unnecessarily and solely for its offensive purposes in extrinsic litigation.

Just one appellate court case, *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998), superficially supports KFA's interpretation of Section 502(a). There, the Ninth Circuit held that because a mortgagee's proof of claim had been "deemed allowed" in the absence of an objection, the debtor was precluded from pursuing a later state court suit arising out of the mortgagee's foreclosure. *Id.*, 143 F.3d at 529–30. *Siegel* states that proofs of claim not objected to are deemed allowed. *Siegel* does not, however, discuss the claims allowance process for a no asset case.[12] Moreover, as Mid-Continent correctly notes, *Siegel* concerned a potentially valuable asset of the debtor's estate: lender liability claims against the creditor. The Ninth Circuit reasoned that if the causes of action could have been successfully prosecuted, the debtor "could even have come out solidly solvent," rather than bankrupt. *Siegel*, 143 F.3d at 531. The lender liability suit might, in other words, have conceivably affected the debtor's estate. The situation here is the opposite. As the magistrate judge noted, no matter what the outcome of KFA's lawsuit,

---

[12] KFA urges this court to take judicial notice of a PACER filing showing, in the underlying bankruptcy, that *Siegel* did indeed concern a no-asset case. But regardless whether the *Siegel* bankruptcy was, in fact, a no-asset case, the specific question of whether claims should be deemed allowed in a no-asset case was not addressed by the Ninth Circuit.

Hallmark Collection's bankruptcy estate would have remained insolvent and without assets. *Siegel* is both distinguishable and non-dispositive for KFA.[13]

KFA also contends that rejecting its narrow textual interpretation would have unintended consequences for IRS's "routine" filing of proofs of claim in no asset cases and for claims arising from individual debtors' personal property that is subject to security interests. 11 U.S.C. § 521(a)(6). Both propositions are incorrect, and both are based on the premise, not adopted here, that the bankruptcy court lacked jurisdiction to rule on claims in a no asset case. First, KFA cites only one case in support of its contention about IRS practice. *In re Geisler*, 539 B.R. 253 (W.D. Pa. 2015), *aff'd. sub nom. In re Geisler*, No. 15-3828, 2016 WL 4206378 (3d Cir. 2016). Read carefully, however, *Geisler* referred to an IRS tax claim as "deemed allowed" that had been filed in the debtor's Chapter 13 case and was not objected to until a year later and following subsequent conversions to Chapter 11 and Chapter 7. A Chapter 13 case, by definition, has assets. Moreover, the court ruled on the merits of IRS's claim rather than resting on the claim's "deemed allowed" status. *Geisler* is inapposite. Finally, 11 U.S.C. § 505 expressly authorizes bankruptcy courts to determine all debtors' tax liability within certain parameters. Second, Section 521(a)(6) requires particular secured creditors of individual debtors to have an "allowed claim" as a predicate for reaffirmation or redemption agreements that must be approved by the bankruptcy court. By specifying how the claims allowance procedure operates in particular instances, Section 521(a)(6) as well as Section 505 confirm rather than undermine the conclusion that the

---

[13] KFA contends that *Siegel* has been adopted in this circuit, but *Siegel* was cited only for a general proposition while this court was deciding whether a debtor has standing to pursue the appeal of a claim allowance. *In re Mandel*, 641 Fed. App'x. 400, 403 (5th Cir. 2016) (per curiam, unpublished).

necessity for claims allowance procedures must be interpreted in light of the Bankruptcy Code as a whole.

## CONCLUSION

We hold that KFA did not have a "deemed allowed" claim that constitutes res judicata against Mid-Continent because in this no asset bankruptcy case, nothing in the court proceedings required claims allowance, no notice was provided to parties in interest to object to claims, and no bankruptcy purpose would have been served by the bankruptcy court's adjudicating KFA's claim. The district court's judgment in favor of Mid-Continent is **AFFIRMED**.