NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DIMITRI ROZENMAN,
*Petitioner/Appellee,*

v.

JANA ROZENMAN,
*Respondent/Appellee.*

---

JOSE BLANCO, et al.,
*Intervenors/Appellants,*

No. 1 CA-CV 19-0751 FC

FILED 11-5-2020

---

Appeal from the Superior Court in Maricopa County
Nos. CV2017-156301
FC2008-001839
(Consolidated)
The Honorable Margaret LaBianca, Judge

**AFFIRMED**

---

COUNSEL

Jana Rozenman, Phoenix
*Respondent/Appellee*

Snell & Wilmer, LLP, Phoenix
By Benjamin W. Reeves, Emily Gildar Wagner
*Counsel for Appellee Discharged Receiver Bradley Reith*

Schutt Law Firm, PLC, Scottsdale
By Kenneth W. Schutt, Jr.
*Counsel for Intervenors/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1  Intervenors Jose Blanco, KV9, Inc., Schutt Law Firm, PLC, and Arkady Vikentiev (collectively "Creditors") appeal various superior court orders regarding the termination of a receivership. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2  We presume the parties' familiarity with the lengthy procedural history of this dispute and provide only a brief recount of the prior cases and appeals.

*Divorce, Murder, Receivership, and Tort Cases*

¶3  Dimitri Rozenman ("Husband") and Jana Rozenman ("Wife") were divorced by dissolution decree in January 2009 ("Decree"). The Decree provided that Husband was the sole owner of a cigar business ("Business"). The Business consisted of several limited liability companies ("LLCs") and associated retail stores. After the superior court entered the Decree, Husband moved for a new trial and asserted, among other arguments, that he only had a 75 percent interest in the Business's real property in Mesa ("Mesa Property"). Husband alleged Intervenor/Creditor Jose Blanco ("Blanco") co-owned the LLC that owned the Mesa Property ("2826 LLC"). The superior court denied the motion. Husband appealed the Decree's division of property, and this Court affirmed the judgment. *See Rozenman v. Rozenman* (*Rozenman I*), 1 CA-CV 09-0337, 2010 WL 845924, at *1, ¶ 1 (Ariz. App. Mar. 11, 2010) (mem. decision).

¶4  One month after the Decree, Husband was arrested and indicted for conspiracy to murder Wife. A jury convicted Husband, and the trial court sentenced him to a minimum of twenty-five years in prison. On appeal, this Court affirmed Husband's conviction and sentence. *See State v.*

*Rozenman*, 1 CA-CR 13-0458, 2015 WL 404537 (Ariz. App. Jan. 1, 2015) (mem. decision).

**¶5**        During and after his criminal trial, Husband continued to run the Business through his business manager.  Later, Husband replaced the business manager with his girlfriend, and Wife petitioned the court to appoint a receiver.  In June 2010, the superior court granted Wife's petition and appointed a receiver (the "Receiver").[1]  Husband did not object, but in 2012 he sought the receivership's termination.  The superior court denied the motion, and we affirmed.  *See Rozenman v. Rozenman* (*Rozenman II*), 1 CA-CV 13-0280, 2014 WL 2211398 (Ariz. App. May 27, 2014) (mem. decision).

**¶6**        In 2011, Wife sued Husband for personal torts relating to the murder conspiracy.  In August 2015, Wife obtained a judgment for $22,807,000 against Husband.  *See Rozenman v. Rozenman*, No. CV2011-001525, 2015 WL 6964056 (Maricopa Cty. Super. Ct. Aug. 27, 2015) (judgment), *appeal abandoned*, 1 CA-CV 15-0849 (Ariz. App. Feb. 9, 2016).

**¶7**        In 2013, during the receivership, Husband executed security agreements with the Creditors that purported to establish security interests in his membership interests in the LLCs.[2]  The Creditors then filed Uniform Commercial Code ("UCC") Financing Statements (UCC-1) with the Arizona Secretary of State covering Husband's "right, title and membership interest" in the LLCs.  *See* A.R.S. §§ 47-9310 and -9312.  Husband also granted a separate security interest to non-party Joel Thompson and a deed of trust against the Mesa Property to RLS Capital, Inc. ("Lender").[3]

*The Liquidation Orders*

**¶8**        Wife sought payment of the $13,602 attorney fee award we issued in *Rozenman II* through the receivership.  On September 15, 2015, the

---

[1]        The court originally appointed the business manager as the receiver. In February 2016, Bradley Reith became the successor receiver.

[2]        The following debts were asserted by the Creditors: Arkady Vikentiev ($400,000), Jose Blanco ($760,000), KV9, Inc. ($20,000), and Schutt Law Firm, PLC ($206,720.77).

[3]        In 2018, RLS Capital, Inc. assigned its note to Culver City Properties, LLC.

superior court granted an "Application for Payment of Judgment for Attorney's Fees."

**¶9**        In August 2015, a third party offered to buy the Business's store and real property located in Phoenix for $550,000. At the request of Wife, the superior court authorized the sale on October 15, 2015, and ordered the proceeds applied to Wife's liens.

**¶10**        In January 2016, Wife sought an order for a sheriff's sale of the Business's remaining assets and the Mesa Property to satisfy Husband's debts to Wife. On March 4, 2016, the superior court entered an order approving the proposed sales.

### The Bankruptcy Case

**¶11**        In June 2016, Husband filed a voluntary Chapter 7 bankruptcy petition. *See In Re Rozenman*, No. 4:16-bk-07234 (Bankr. D. Ariz. June 24, 2016). The bankruptcy court found Wife's tort judgment non-dischargeable. *See Sampson v. Rozenman* (*In Re Rozenman*), No. 4:16-ap-00472 (Bankr. D. Ariz. Feb. 27, 2017). Husband received a discharge, and the bankruptcy case closed in September 2017 with no distribution of any assets.

### The Civil Case and the Creditors' Intervention

**¶12**        In December 2017, Wife filed a complaint against Husband and the Creditors, seeking the alleged transfers of security interests in the Business by Husband to Creditors declared void and invalid. In January 2018, the Creditors sought to intervene in the dissolution action. The superior court granted the motion to intervene and consolidated the civil case with the dissolution action.

**¶13**        The Creditors moved to vacate the orders entered on September 15, 2015, October 15, 2015, and March 4, 2016 (collectively "Liquidation Orders"). The Creditors claimed that they did not receive notice of the proceedings and that the Liquidation Orders were void under Arizona Rule of Family Law Procedure ("ARFLP") 85(C)(1)(d) for "depriving them of property rights without notice and an opportunity to be heard." In May 2018, the superior court denied the motion to vacate.

**¶14**        In April 2018, Wife filed a motion for declaratory judgment. The Creditors moved to dismiss, alleging that such relief was time-barred. The superior court denied the motion to dismiss.

*Sale of the Mesa Property*

**¶15**　　In October 2018, Lender filed a notice of appearance and sought a trustee's sale of the Mesa Property. The court temporarily stayed the sale but ordered that the stay would expire unless the Receiver posted a bond. The Lender acquired the Mesa Property at a trustee's sale on October 15, 2018, via a credit bid for $550,000.

*Receiver Discharge*

**¶16**　　On November 28, 2018, Wife purchased the Business's assets at a special execution sale by credit bidding a portion of her tort judgment. The Receiver then turned over the Business's assets to Wife. Over Husband's objection, the superior court granted the Receiver's discharge motion. The court entered the discharge as final under Arizona Rule of Civil Procedure 54(c).

**¶17**　　On July 1, 2019, the superior court entered a declaratory judgment against Creditors. It declared Wife's interests in the Business's funds and assets "superior" to Creditors' asserted interests. Between July and September 2019, the Creditors filed several motions seeking a new trial on the declaratory judgment and the Receiver's discharge. The court denied the motions and the Creditors appealed.

## JURISDICTION

**¶18**　　The Receiver asserts that we lack jurisdiction over an appeal of the Receiver's discharge order because the Creditors failed to timely appeal the same, causing it to become final and non-appealable. We disagree.

**¶19**　　The Court of Appeals has jurisdiction to consider an appeal from a "final judgment" that disposes of all claims and parties. A.R.S. § 12-2101(A)(1); *Kim v. Mansoori*, 214 Ariz. 457, 459, ¶ 6 (App. 2007). The superior court determined that the ARFLP controlled over the consolidated case. A family court ruling is not final and appealable until all the claims pending before the family court have been resolved or until the family court has issued a certification of finality. Ariz. R. Fam. Law P. 78; *McCarthy v. McCarthy*, 247 Ariz. 414, 416, ¶ 6 (App. 2019).

**¶20**　　Despite the superior court's assertion in the discharge order that "[n]o further matters remain[] pending," Wife's motion for declaratory judgment remained at issue, and the court heard oral argument on the motion in May 2019. Thus, the discharge order was not a "final judgment."

*See McCarthy*, 247 Ariz. at 416, ¶ 7; *see also Aea Fed. Credit Union v. Yuma Funding, Inc.*, 237 Ariz. 105, 110, ¶ 17 (App. 2015) (holding that an order declining to set aside an order appointing or releasing a receiver is not a final appealable order).

**¶21** Further, the superior court did not find "no just reason for delay" such that an appeal would be proper under ARFLP 78(b). *See McCarthy*, 247 Ariz. at 416, ¶ 6. This determination is not affected by the discharge order's citation to Arizona Rule of Civil Procedure 54(c), the equivalent provision to ARFLP 78(c). Because the discharge order similarly lacked a certification pursuant to Arizona Rule of Civil Procedure 54(b), we need not decide whether certification under that rule would permit an appeal in a case governed by the ARFLP. *Cf. In re Marriage of Kassa*, 231 Ariz. 592, 593, ¶ 5 n.1 (App. 2013) (noting that "we may apply interpretations of Rule 54(b) to Rule 78([b])").

**¶22** Accordingly, the discharge order became final on July 1, 2019, and is reviewable on appeal. *See Dowling v. Stapley*, 221 Ariz. 251, 263, ¶ 36 n.12 (App. 2009) ("[A]ppeal from the final judgment would include appeals from otherwise non-appealable interlocutory orders."). The Creditors' timely filed a notice of appeal, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1), (2), and (5)(a).[4]

## DISCUSSION

**¶23** The Creditors raise multiple issues on appeal. We separately address the Creditors' UCC interests and Blanco's claimed ownership interest in 2826 LLC.

### I. The Creditors Had No Interest in the Business's Assets Through Their UCC Fillings.

**¶24** Based on the doctrine of *custodia legis*, the superior court found that the Creditors had "no valid interest in the Receivership Property." "It is well settled that property in *custodia legis* is not subject to attachment or garnishment. This rule is universal." *O'Leary v. Superior Court*, 104 Ariz. 308, 311 (1969), *overruled in part on other grounds by Walker v.*

---

4   This Court stayed the appeal pending an ARFLP 78(c) order. *See Eaton Fruit Co. v. Cal. Spray-Chemical Corp.*, 102 Ariz. 129, 130 (1967). Further, another panel of this Court determined that the Creditor's counterclaims had "been resolved and the court has jurisdiction over the appeal." *Rozenman v. Blanco*, 1 CA-CV 19-0751 FC (Ariz. App. Mar. 23, 2020) (order).

*Dallas*, 146 Ariz. 440 (1985). Property controlled by a receiver is in *custodia legis* and is not subject to levy or sale without leave of court. *Kunselman v. Kaser*, 41 Ariz. 219, 226 (1932). "[T]he rule is enforced by the courts to preserve the jurisdiction of the court administering the particular property." *O'Leary*, 104 Ariz. at 311 (holding that "no interest in, or lien on, the *res* was ever acquired []since the *res* was in *custodia legis*").

¶25 On appeal, the Creditors raise five arguments against the application of *custodia legis*.

### A. Standing.

¶26 First, the Creditors argue that Wife lacked standing to contest the validity of the Creditors' claims. We disagree.

¶27 Before seeking declaratory judgment against the Creditors, Wife sought the sale of the Business's assets in the receivership to satisfy her judgment against Husband. The court approved Wife's request and ordered that the sale proceeds be turned over to Wife. The Creditors then sought to encumber the funds that would otherwise go to Wife. We are satisfied, under the facts in this case, that Wife had "a legitimate interest in the outcome" of the motion for declaratory relief. *In re Strobel*, 149 Ariz. 213, 216 (1986); *cf. also Acad. Life Ins. Co. v. Odiorne*, 165 Ariz. 188, 191 (App. 1990) (holding that "claimants have standing to assert the statute of limitations defense in receivership proceedings where the receiver has neglected to do so").

### B. Texas Receivership Law.

¶28 The Creditors also argue that receivership law permits the owner of the receivership assets to encumber their interest beyond that necessary to fulfill the receivership's purpose. The Creditors rely on a decision from the Texas Court of Civil Appeals in which that court stated that "[s]ince a receivership does not vest the receiver with title to the property in his control, it does not preclude the owner from encumbering the property, or contracting with reference to it, subject to the receivership, in any other way." *Fuller v. Neel*, 535 S.W.2d 719, 720-21 (Tex. Civ. App. 1976) (citing 49 Tex.Jur.2d, Receivers, Sec. 11). The Creditors' reliance on this case is misplaced. On appeal, the Texas Supreme Court reversed and held that the owner's purported conveyance was "declared to have no force and effect . . ." because "the property was held in *custodia legis* free from interference with the exclusive custody and possession which the [receivership] court had assumed over it." *Neel v. Fuller*, 557 S.W.2d 73, 76,

77 (Tex. 1977). The Creditors' citation to other older Texas authorities is similarly unpersuasive.

### C.    Judicial Estoppel.

**¶29**    Next, the Creditors assert that Wife and the Receiver are barred from arguing that *custodia legis* should apply based on the doctrine of judicial estoppel. In 2013, Husband took out a $400,000 loan from Lender and secured it with a deed of trust against the Mesa Property. Husband used the funds to pay Wife the remaining non-child support obligations under the Decree. The Creditors assert that, while the Court did not give prior approval of the transaction, Wife and the Receiver acquiesced to the transfer of security interests in the real property.

**¶30**    Judicial estoppel prevents "a party who has assumed a particular position in a judicial proceeding . . . [from assuming] an inconsistent position in a subsequent proceeding involving the same parties and questions." *State v. Towery*, 186 Ariz. 168, 182 (1996) (quoting *Martin v. Wood*, 71 Ariz. 457, 459 (1951)). Here, the parties are not the same; the deed of trust involved Lender, not the Creditors. *See id.* (noting the first required element of judicial estoppel is that "the parties must be the same"). Further, the Creditors do not cite, and we are unaware of, any authority that a failure to object is a "position" that can be judicially estopped. *See Glover v. Bank of New York*, 147 P.3d 336, 343-44 (Or. App. 2006) (finding no authority that a failure to object constitutes an inconsistent statement for purposes of judicial estoppel). Thus, the doctrine of judicial estoppel is inapplicable.

### D.    Claim Preclusion.

**¶31**    The Creditors also argue that Wife cannot assert *custodia legis* because she did not raise it during Husband's bankruptcy. We review Husband's bankruptcy case and applicable federal law to determine whether the bankruptcy case should be given preclusive effect. *See Howell v. Hodap*, 221 Ariz. 543, 546, ¶ 17 (App. 2009) ("We review de novo the claim preclusive effect of a prior judgment."); *Maricopa-Stanfield Irr. & Drainage Dist. v. Robertson*, 211 Ariz. 485, 491, ¶ 37 (2005) ("Federal law determines the preclusive effect of a federal court judgment in state court.") (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001)).

**¶32**    The defense of claim preclusion has three elements: (1) an identity of claims, (2) a final judgment on the merits in the previous litigation, and (3) identity or privity between parties in the two suits. *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24 (1971).

Wife and the Creditors dispute whether the bankruptcy court issued an applicable final judgment.

¶33        The Creditors rely on a Ninth Circuit decision holding that, when no objections are filed to a creditor's proof of claim in bankruptcy, the claim is "deemed allowed" and the claim's validity cannot be attacked in later proceedings. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 530-31 (9th Cir. 1998). Other courts question the soundness of that proposition. *See Cty. Fuel Co. v. Equitable Bank Corp.*, 832 F.2d 290, 292 (4th Cir. 1987) ("[I]t is doubtful that the 'automatic allowance' under 11 U.S.C. § 502(a) of a claim not objected to constitutes a 'final judgment' of the type that gives rise to 'bar' or 'claim preclusion' under strict res judicata principles."); *In re One World Adoption Servs., Inc.*, 571 B.R. 474, 485 (Bankr. N.D. Ga. 2017) ("The *Siegel* opinion, however, has been criticized by many courts . . . ."). Wife also cites to a Fifth Circuit decision that distinguished *Siegel* in a "no asset" bankruptcy case. *See Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.*, 852 F.3d 405, 415-16 (5th Cir. 2017) (holding that an unobjected-to claim in a no asset bankruptcy is not preclusive).

¶34        The Creditors counter that, notwithstanding the report of no distribution by the Chapter 7 trustee ("Trustee"), Husband's bankruptcy was not a "no asset" case. We disagree. *See generally In re Brown*, 606 B.R. 40, 49 (B.A.P. 9th Cir. 2019) ("If no assets are available for administration, a debtor's case may be designated as a no asset case, and a notice is sent out instructing creditors not to file a proof of claim."). Husband's bankruptcy schedules identified no assets other than his membership interests in the various LLCs, and those assets were subject to the ongoing receivership. The Trustee issued a "Report of No Distribution" in which she declared "that there is no property available for distribution from the estate." The report noted $1,222,050 of "Assets Abandoned." *See* 11 U.S.C. § 554; *Catalano v. Comm'r.*, 279 F.3d 682, 685 (9th Cir. 2002) ("Upon abandonment, the debtor's interest in the property is restored *nunc pro tunc* as of the filing of the bankruptcy petition."); *see also In re Xonics, Inc.*, 813 F.2d 127, 132 (7th Cir. 1987) (holding bankruptcy court lacked jurisdiction to hear a dispute between two creditors over assets abandoned by the estate).

¶35        We agree with Wife's characterization of Husband's bankruptcy as a "no asset" case. A bankruptcy case can be administered as a "no asset" case, notwithstanding a debtor's substantial assets. *See In re Bilzerian*, 258 B.R. 850, 853, 857-58 (Bankr. M.D. Fla. 2001) (noting "no asset" nature of bankruptcy case, despite debtor's ownership of "substantial assets" in federal receivership, when bankruptcy schedules "listed no assets available for creditors"); *see also In re Pena*, 600 B.R. 415, 418 (B.A.P. 9th Cir.

2019) (finding case administered as a "no asset" case despite administration of real property on behalf of secured creditors prior to abandonment).

¶36        The Creditors alternatively argue that the only explanation for the Trustee's abandonment of the assets is "because the assets were the subject of the security interests of Appellants." We find this unsupported argument unpersuasive. *See In re Bilzerian*, 258 B.R. at 858 (dismissing no asset bankruptcy when "receivership is already in place for the purposes of marshaling and liquidating [debtor's] assets").

¶37        Concluding that Husband's bankruptcy was a "no asset" case, we turn to our preclusion analysis.

¶38        While we generally "look first to the Ninth Circuit rule in interpreting substantive federal statutory law," *Weatherford ex rel. Michael L. v. State*, 206 Ariz. 529, 533, ¶ 9 (2003), several courts reject *Siegel* or distinguish it in the no asset context. *See Kipp Flores Architects*, 852 F.3d at 415; *Cty. Fuel Co.*, 832 F.2d at 292; *In re Giordano*, 234 B.R. 645, 649 (Bankr. E.D. Pa. 1999) (criticizing application of *Siegel*); *In re Khan*, 10-36155, 2011 WL 6179941, at *4-5 (Bankr. E.D. Tenn. Dec. 13, 2011) (declining to follow *Siegel* in "no asset" case); *see also In re Ramirez Ramirez*, 8:18-BK-13870-CB, 2020 WL 4436263, at *8 (B.A.P. 9th Cir. Aug. 3, 2020) (distinguishing *Siegel* when prior Chapter 13 bankruptcy was dismissed); *In re Santry*, 481 B.R. 824, 830 (Bankr. N.D. Ga. 2012) (same).

¶39        We find the decision in *Siegel* is either distinguishable, *see Kipp Flores Architects*, 852 F.3d at 415 (explaining that "*Siegel* does not, however, discuss the claims allowance process for a no asset case"), or is not a "clear rule" that "appears just" in the no asset context, *Weatherford*, 206 Ariz. at 533, ¶ 9. The Fifth Circuit's well-reasoned analysis on the lack of preclusive effect of claims filed without objection in "no asset" cases is persuasive. *Kipp Flores Architects*, 852 F.3d at 409-16. Without assets to distribute in the bankruptcy estate, there is no need to file proofs of claims. *See In re Nielsen*, 383 F.3d 922, 927 (9th Cir. 2004) ("[T]he bankruptcy rules permit the court to dispense with the filing of proofs of claim in a no-asset case.") (citation omitted). It follows that there is no purpose for the bankruptcy court to hear an interested party's challenge to a creditor's claim, as no matter the outcome of the dispute, the debtor's bankruptcy estate would remain insolvent and without assets. *Kipp Flores Architects*, 852 F.3d at 415; *see also In re Khan*, 2011 WL 6179941, at *5 (noting "concerns as to the res judicata effect of an unchallenged and therefore 'deemed allowed' proof of claim are unfounded" in a "no asset" case).

**¶40** Here, the ongoing receivership prevented the Trustee from distributing any assets to Husband's creditors, even if Wife had pursued her challenge to the Creditors' claimed interests during the bankruptcy. *See In re Uno Broad. Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994) (holding that pre-petition receiver remained in custody and control of the debtor's assets during bankruptcy). In other words, the dispute between the Creditors and Wife would have had no effect on the administration of Husband's bankruptcy estate. *See Kipp Flores Architects*, 852 F.3d at 415. Thus, we find that Wife's failure to challenge the Creditor's claims based on *custodia legis* in the bankruptcy court had no preclusive effect.

### E.      Security Interest Outside the Receivership.

**¶41** Finally, the Creditors alternatively assert that *custodia legis* is generally inapplicable because Husband's membership interests are not receivership assets. But this is contrary to the receivership order, which notes that the Business components are operated through separate LLCs. The court treated the "Businesses as a whole" and granted the Receiver power to take possession of the Business. Further, when Husband attempted to transfer his membership interest in one of the LLCs to his girlfriend, the superior court voided the transfer for violating the receivership order. Accordingly, Husband's membership interests were receivership assets, and *custodia legis* bars any transfer of those interests.

## II.      Remaining UCC Interest Issues Are Moot.

**¶42** Because we affirm the superior court's declaratory judgment that the Creditors lacked an interest in the receivership assets through their UCC fillings, we need not address their fraudulent transfer arguments, the motion to dismiss, their motion to vacate the Liquidation Orders, or their appeal of the receivership discharge order as those issues are now moot. We address Blanco's claims on appeal separately.

## III.      Blanco's Purported Membership Interest in 2826 LLC.

### A.      Blanco Waived Any Argument Appealing the Receiver's Discharge.

**¶43** Blanco argues that the superior court erred by discharging the Receiver and approving the Receiver's final account because the Receiver should not have allowed the Lender to foreclose on the Mesa Property. The Receiver argues that Blanco waived this argument because Blanco did not assert his objection until the amended motion for a new trial.

¶44            "Parties may not sit by and allow error which is not fundamental to be committed, without protesting and asking the trial court to correct the error at the time, and then later, when the judgment goes against them, ask for a new trial on that ground." *S. Ariz. Freight Lines, Ltd. v. Jackson*, 48 Ariz. 509, 518 (1936); *see Conant v. Whitney*, 190 Ariz. 290, 293 (App. 1997) (finding appellant "waived the issue by first raising it in the motion for a new trial"); *Helena Chem. Co. v. Coury Bros. Ranches, Inc.*, 126 Ariz. 448, 453 (App. 1980) (holding that "a motion for new trial may not be based on a question to which no objection was made at the time of trial unless the error is fundamental").

¶45            During the litigation, Blanco objected to the Receiver's motion authorizing the sale of the Mesa Property. Blanco questioned why the Receiver did not use funds from the sale of the Phoenix property to pay the deed of trust on the Mesa Property. The objection did not assert gross negligence by the Receiver. The Receiver responded by noting that he made the distribution to Wife according to the superior court's October 15, 2015, order. The court denied the objection. Despite being aware of the Receiver's actions prior to his discharge application, Blanco did not object or raise this issue. The issue did not come up again until the amended motion for a new trial.

¶46            Although none of the Creditors objected to the discharge order, Blanco argues we should consider the issue because Husband filed an objection. *See Gordon v. Liguori*, 182 Ariz. 232, 237 (App. 1995) (declining to find waiver when the issue was argued before the trial and the court made a tentative ruling on it). But contrary to Blanco's claim, Husband's objection did not assert any objections to the Mesa Property. Instead, Husband's "Motion For Leave to File Lawsuit against the Receiver" asserted that "due to the Receiver's gross negligence [Wife] stole $309,242.34" and made other assertions related to Husband's IRS debt. The allegedly stolen funds represent child support overpayments made by the Receiver to Wife. Again, Blanco was aware of the Receiver's actions relating to the child support overpayments but did not file an objection. Although Husband raised gross negligence, he asserted the funds should have been used to pay his income tax debt. He did not assert negligence relating to the management or foreclosure of the Mesa Property. That argument was not raised before the amended motion for a new trial.

¶47            Blanco also argues that, waiver notwithstanding, in our discretion we may nevertheless analyze the merits of an appellant's arguments. *See CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, 363, ¶ 29 (App. 2013) (holding party "waived this argument" by "not

object[ing] . . . on this basis" but examining the merits and determining "no error occurred"). We decline to exercise that discretion here. Such discretion is particularly inappropriate when the objecting party's inaction allows a receivership to terminate, and no funds remain for collection or for the receiver's defense. *See AEA Fed. Credit Union*, 237 Ariz. at 110, ¶ 18 ("The appointment of a receiver sets in motion a series of events that cannot easily be unwound and may have significant effects on relationships and transactions involving non-parties."); *see also S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 331-32 (7th Cir. 2010) (recognizing the administrative difficulty of reversing consummated business transactions and potential for unfair effect on innocent third parties).

**¶48** Accordingly, we find that Blanco waived any objection to the order discharging the Receiver.

### B. Blanco's Appeal of the Mesa Property Sale Order is Moot.

**¶49** Blanco also appeals the order authorizing the Mesa Property sale, which directed the entire proceeds to Wife. Blanco asserts that his right as an owner was superior to any right of Wife to receive distributions from 2826 LLC. But Blanco does not assert, and the record does not indicate, what distributions, if any, Wife received from 2826 LLC. Instead, the record reflects that Lender received possession of the Mesa Property, the only purported asset of 2826 LLC.

**¶50** Thus, assuming *arguendo* that: (1) Blanco was an owner of 2826 LLC, (2) 2826 LLC owned the Mesa Property, (3) the court erred in failing to vacate the order authorizing the sheriff's sale, and (4) Blanco did not waive the issue by asserting it for the first time in the second motion for a new trial, Blanco's appeal of that order is moot. *See ASH, Inc. v. Mesa Unified Sch. Dist. No. 4*, 138 Ariz. 190, 191-92 (App. 1983) (finding moot a request to declare a fully performed contract void).

## IV. Attorney Fees.

**¶51** The Receiver requests an award of attorney fees pursuant to A.R.S. § 12-341.01 and his costs. In the exercise of our discretion we deny the Receiver's fee request. As a successful party on appeal, the Receiver is entitled to his costs. *See* ARCAP 21.

**CONCLUSION**

¶52       For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA